1
2
3
4
5
6
7
8
9
10
11
12
13

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

UNITED STATES OF AMERICA,     )
                            )
           Plaintiff,      )     Case No.  2:12-cr-00063-PMP-CWH
                            )
vs.                       )     **Report & Recommendation**
                            )
MELISSA HACK,              )
                            )
           Defendant.    )
_____)

14
15
16
17
18
19
20
21
22
23
24

      This matter was referred to the undersigned Magistrate Judge on Defendant Ross Hack's Motion for the Court to Determine Pre-Trial Whether Federal Jurisdiction Existed in 1998 Over the Geographic Area at Issue in the Counts of the Indictment (#198), filed January 24, 2014; the Government's Response (#213), filed February 18, 2014; and Defendant's Reply (#223), filed March 3, 2014.[1]  In conjunction with the motion, the Court has also considered Defendant Ross Hack's Errata (#198), filed January 27, 2014.  All Defendants joined the motion.  *See* Minute Orders (#200) and (#204).  Upon instruction, the parties' submitted a joint status report on March 11, 2014 regarding the requirements for a proposed evidentiary hearing on Defendants' motion (#198).  Thereafter, on May 13, 2014, the undersigned conducted an evidentiary hearing on the motion (#198) and, pursuant to Local Rule IB 1-4 and 28 U.S.C. § 636(b)(1)(B), issues the following recommendation.

25

**BACKGROUND**

26
27

      On February 28, 2012, the Grand Jury returned a four count Indictment charging each Defendant with: (1) two counts of first-degree murder while on federal land in violation of 18

28

      [1]  Though not specifically styled as such, motion (#198) is a motion to dismiss under Fed. R. Crim. P. 12(b)(3)(B).

U.S.C. §§ 7(3) and 1111; (2) two counts of using a firearm during a crime of violence in violation of 18 U.S.C. §§ 924(c) and (j); and (3) four counts of aiding and abetting in violation of 18 U.S.C. § 2. Defendant Melissa Hack has subsequently entered into a plea agreement, which was accepted by the Court. *See* Minutes of Proceedings (#248); Plea Agreement (#252). Her sentencing and disposition hearing is currently scheduled for September 8, 2014. Trial is currently scheduled to commence for the remaining defendants on August 18, 2014. The case has been designated complex for purposes of discovery and was capital eligible.[2]

The motion (#198) is straightforward. Defendants, noting that the federal murder statute is not a general jurisdiction statute, request that the Court "determine as a matter of law the existence of the federal jurisdiction over the geographic area." Defendants acknowledge the difference between determining whether federal jurisdiction exists over the geographic area in question and determining whether the offense was committed within the geographic area, the latter being properly reserved as an issue of fact for the trier of fact. Defendants argue that, based on their review of maps provided in discovery, it does not appear the victims bodies were found within the special maritime and territorial jurisdiction of the United States. Thus, they requested a hearing to answer the specific and limited question regarding "the existence of federal jurisdiction . . . over the geographic area at issue."

The Government does not take issue with the case law cited to support the proposition that the Court may determine, pretrial, the jurisdictional question raised. It does, however, contend that victims bodies were found on land owned and managed by the Federal Bureau of Land Management ("BLM"). The Government attached two exhibits purporting to show that the victims were found on federal land, but did not object to a pretrial evidentiary hearing to address the jurisdictional question. In reply, Defendant Ross Hack argues that the Government must prove by competent and admissible evidence the existence of federal jurisdiction over the geographic area. He argues that testimony from those with personal knowledge or other competent admissible

[2] After following the death penalty protocol for capital cases, the Government determined that it would not seek the death penalty. *See* Mins. of Proceedings (#169).

2

1    evidence is necessary.

2          The Court conducted an evidentiary hearing on the jurisdictional question on May 13,

3    2014.  At that hearing, the Government called a single witness, Ms. Vanessa Hice, who is

4    employed by the BLM in the Southern Nevada District.  She works in the Division of Land in the

5    Las Vegas Field Office and, for the four years previous to her testimony, was an assistant field

6    manager.  Her office is responsible for managing public land in Clark County, Nevada.  She has

7    been a BLM employee for over 20 years, working primarily in real estate related activities.  In her

8    current capacity, she supervises operations in the Las Vegas field office.  She has extensive training

9    and experience in conveyances, map reading, determining land descriptions, and adjudicating

10   rights-of-way.  She is familiar with the filing system and databases in which land records are

11   maintained at federal, state, and local levels.

12         At the hearing, Ms. Hice testified that she was made aware, through the review of crime

13   scene investigations, maps, photographs and global positioning system ("GPS") coordinates

14   provided by law enforcement, of the location where the victims bodies were found on July 4, 1998.

15   Based upon the information provided, she determined that the bodies were located within

16   Township 19 South, Range 59 East, Section 24 in Clark County, Nevada.[3]  She further testified

17   that, prior to the hearing, she studied various land records and supervised the preparation of a map

18   to be used as a summary of evidence to explain her findings regarding ownership of the property

19   where the bodies were located.  The map was admitted as evidence over objection.

20         Ms. Hice testified that the map admitted as exhibit 1 displays the entirety of Section 24, and

21   has a number 24 in its center.  The map depicts numerous small squares, each containing a name

22   and a number.  These squares depict the locations of five acre patents.  A "patent" is the

23   conveyance of property rights from the United States to an individual.  Patent records specifically

24   identify the name of the person who received the patent, the patent number, the legal description of

25   the property, and the date of the conveyance.  Also depicted on the map is a line with small

26   _____

27         [3]  It is widely known and accepted that a "section" of land is an area of approximately one square mile,
     containing 640 acres, with 36 sections making up one survey township on a rectangular grid.  Based on Ms.
28   Hice's testimony, the general location of the bodies was within the square mile of Section 24.

bubbles, running north and south.  Ms. Hice identified this demarcation as a right-of-way conveyed

to the Southern Nevada Power Company for placement of transmission lines.  She testified that

while a right-of-way conveys the right to use the property, it does not convey ownership of the

property, which remains with the government.  Individuals or entities holding a right-of-way

sometimes pay rent to the government to keep the right-of-way.  Along with the markings

demarcating the right-of-way, there are two circles with the numbers 1127 and 1128.  These are

individual power poles along the right-of-way.  Ms. Hice testified that she personally determined

the GPS locations of those power poles.  Based upon the location of power pole 1128 and the

reported GPS location of the victims, Ms. Hice determined that one victim's body was located 350

feet east of power pole 1128 and the other along the right-of-way approximately 200 feet south of

power pole 1128.

        Based upon her research, Ms. Hice testified that all of the land in Section 24 came into the

possession of the United States in 1848 as a result of the Treaty of Hidalgo.[4]  Section 24 remained

exclusively in the possession of the United States until the various patents depicted in Section 24

were issued.  There are no records of private ownership predating 1848.  Each of the patents

depicted came into existence prior to December 31, 1997.  For example, Government Exhibit 2 is

patent 1200409 and describes land conveyed to an individual identified as Marvin Brown in 1959.

The land is located directly south of the reported location of one of the victims.  *See* Government

Ex. 2.  (Gov't Ex #2).[5]  Patent 1161041, located west of the Marvin Brown patent, describes a

conveyance to Lester Thompson on June 26, 1956.  *See* Gov't Ex. 3.  Patent 1203237 was

conveyed to William Douglas in 1960.  Gov't Ex. 4.  Right-of-Way decision N-043546 conveyed a

_____

        [4]  The Court takes judicial notice of the Treaty of Guadalupe Hidalgo, July 4, 1848, U.S.-Mexico, 9 Stat. 929. 1848.  The Treaty is the peace treaty signed in 1848 between the United States and Mexico that ended the Mexican-American War (1846-1848).  As a result of the Treaty, land was ceded by Mexico to the United States in the area that would become, among other states, Nevada.

        [5]  The Court notes that Government Exhibits 2, 3, 4, 5, 6, 8, and 9 were all admitted over objection.  The exhibits are admissible under Federal Rule of Evidence ("FRE") 902(1) and (2)(Public documents are self authenticating) and FRE 1003(Duplicates admissible unless genuine issue of authenticity).  This determination is expressly limited to the admission of these dockets for purposes of this hearing.

1   right-of-way to the Southern Nevada Power Company for Transmission lines on January 24, 1956.

2   Gov't Ex. 5.  Right-of-Way decision N-60903 granted a right-of-way to Clark County, Nevada for

3   road construction on December 17, 1996 along Nevada Power's power transmission right-of-way.

4   Gov't Ex. 6.  Finally, although not depicted on the map, Ms. Hice testified that two large parcels of

5   land were conveyed by patent to Cliffs Edge, LLC in 2003 (approximately 485 acres as identified in

6   Gov't Ex. 8) and to the City of Las Vegas in 2013 (approximately 15 acres as identified in Gov't

7   Ex. 9).  Based on the map, accompanying exhibits, and her own research, Ms. Hice concluded that

8   the bodies found in Section 24 in July, 1998, were found on land owned by the federal government.

9                                        **DISCUSSION**

10          Pursuant to Federal Rule of Criminal Procedure 12(b)(3), "a claim that the indictment or

11   information fails to invoke the court's jurisdiction or to state an offense" may be heard at any time

12   while the case is pending.  *See* Fed. R. Crim. P. 12(b)(3)(B).  Defendants have been charged with

13   two counts of first-degree murder while on federal land in violation of 18 U.S.C. § 1111.[6]  The

14   parties agree that the Government must prove, as an element of the murder charges, that the offense

15   occurred within the "special maritime and territorial jurisdiction of the United States."  *See* 18

16   U.S.C. 1111(b) ("Within the special maritime and territorial jurisdiction of the United States,

17   Whoever is guilty of murder in the first degree shall be punished by death or imprisonment for life;

18   Whoever is guilty of murder in the second degree, shall be imprisoned for any term of years or for

19   life.").  "Special maritime and territorial jurisdiction of the United States" is defined at 18 U.S.C. §

20   7(1)-(9).  The parties agree that, for purposes of this case, the term is defined to include "[a]ny

21   lands reserved or acquired for the use of the United States, and under the exclusive or concurrent

22   jurisdiction thereof . . . ."  18 U.S.C. § 7(3).

23

24   ───────────────

25        [6] Section 1111(a) provides that "[m]urder is the unlawful killing of a human being with malice
     aforethought.  Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate,

26   malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson,
     escape, murder, kidnapping, treason, espionage, sabotage, aggravated sexual abuse or sexual abuse, child abuse,

27   burglary, or robbery; or perpetrated as part of a pattern or practice of assault or torture against a child or children;
     or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being

28   other than him who is killed, is murder in the first degree.

                                              5

It is further undisputed that proof of "special maritime and territorial jurisdiction of the United States" is a mixed question of law and fact. While a district court "may determine as a matter of law the existence of federal jurisdiction over the geographic area." *See United States v. Warren*, 984 F.2d 325, 327-328 (9th Cir. 1993). "[T]he locus of the offense within that area is an issue of fact for the trier of fact." *See United States v. Gipe*, 672 F.2d 777, 779 (9th Cir. 1982); *see also Ninth Circuit Manual of Model Criminal Jury Instructions*, section 8.107 (approved 4/2011) (identifying as an element of the charge that "the killing occurred at [specif[ic] place of federal jurisdiction]."). The "locus of the offense" for murder "shall be deemed to have been committed at the place where the injury was inflicted, or the poison administered or other means employed which caused the death, <u>without regard to the place where the death occurs</u>." *See* 18 U.S.C. § 3236 (emphasis added).[7]

The Court has reviewed all of the exhibits admitted during the evidentiary hearing as well as the testimony offered by Ms. Hice. Based on that review, the undersigned concludes that, as a matter of law, there is federal jurisdiction over the geographic area where the victims were ultimately found. The testimony was that the victims were found in specific locations within Section 24 of Township 19 South, Range 59 East. The exhibits admitted establish that the geographic area in question was first acquired by the United States in 1848 under the Treaty of Hildago (*see* supra. at n. 3). Thus, the real property located in what is now identified as Section 24 of Township 19 South, Range 59 East, was land "reserved or acquired for the use of the United States" for purposes of establishing "special maritime and territorial jurisdiction of the United States."

Since the acquisition of the geographic area in question through December 31, 1997, the Government has conveyed several five acre parcels (by patent) and a right-of-way in Section 24. Exhibit 1. When the federal government conveys land by patent, the land is no longer federal property. For example, Patent 1200409 (admitted as Exhibit 2) is a conveyance of property made

---

[7] The Court admitted several exhibits and accepted testimony at this hearing over objections. None of the evidence or testimony was presented to establish where the "injury was inflicted" on either victim. That question remains an issue of fact for determination by the fact finder.

to an individual named Marvin Brown in 1959. It indicates that the "United States of America ... has given and granted, the tract named ... to have and to hold, with all rights, privileges, immunities of whatsoever nature ... forever." A right-of-way, however, is not a grant of ownership but, rather, a grant for a particular purpose or use. Based on the testimony at hearing, when a right-of-way is granted, the land remains within the "special maritime and territorial jurisdiction off the United States" subject to the specified use for which it was granted. For example, the right-of-way identified in Exhibit 5 remains subject to federal regulations, the payment of rent, and permits only a limited, specific purpose of the land. It is not an absolute conveyance and, therefore, the land remains within the "special maritime and territorial jurisdiction" of the United States.

Based on the exhibits and testimony presented, the undersigned finds, as a matter of law, that the reported locations of the victims bodies was on land within the "special maritime and territorial jurisdiction" of the United States. This conclusion is specifically limited to the geographic location where the bodies were found. It remains for the trier of fact to determine, among other things, where the "injury was inflicted" which caused the deaths of the victims in this matter.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Defendants' Motion for the Court to Determine Pre-Trial Whether Federal Jurisdiction Existed in 1998 Over the Geographic Area at Issue in the Counts of the Indictment (#198) be **denied** to the extent it requests dismissal under Fed. R. Crim. P. 12(b)(3).

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153,

1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED: June 17, 2014.


_____
**C.W. Hoffman, Jr.**
**United States Magistrate Judge**